IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LASHANA DUVALL**                                                                                       **PLAINTIFF**

v.                                              **CASE NO. 4:23-CV-00036-BSM**

**SALEM PLACE NURSING AND**
**REHABILITATION CENTER, INC.**                                                       **DEFENDANT**

## ORDER

Salem Place Nursing and Rehabilitation Center, Inc.'s motion for summary judgment [Doc. No. 9] is granted, and Lashana Duvall's claims are dismissed with prejudice.

### I. BACKGROUND

Salem hired Duvall in September 2020 to work the 7:00 a.m. to 3:00 p.m., four-days on, two-days off shift. Duvall Pers. Recs. 1, Doc. No. 9-3; Duvall Dep. 21:1–7, Doc. No. 9-1. Duvall was given orientation, workplace policies, and an employee handbook. Duvall Pers. Recs. 1; Duvall Dep. 22:9–17, 25:19–26:15. Salem's policy provides that attendance is mandatory for the safety and well-being of its residents. Duvall Dep. 27:1–10. It also provides that termination may result from failure to comply. *Id.* at 27:11–14; Duvall Pers. Recs. 5.

Duvall injured her right shoulder in December 2020 while lifting a resident. Duvall Dep. 27:15–28:1. After receiving treatment, she returned to work on light duty status. *Id.* at 28:2–6, 30:8–12; Light Duty Limitations 1, Doc. No. 9-4.

In June 2021, Duvall began treatment with Dr. J. Tod Ghormley, who initially determined that she should have a five-pound lifting restriction and later recommended that

she should not use her right shoulder. Duvall Med. Recs. 1, Doc. No. 9-2. At a later visit, Dr. Ghormley recommended that Duvall have surgery, which was performed on October 6, 2021. Duvall Dep. 29:13–18, 31:17–32:11. After the surgery, Dr. Ghormley placed Duvall on non-work status for six weeks. Duvall Med. Recs. 8. At her follow-up appointment, Dr. Ghormley recommended that Duvall remain off work until late December but later extended her return date to January 27, 2022. *Id.* at 2, 7. On January 26, 2022, Dr. Ghormley recommended that Duvall remain off work to undergo shoulder manipulation. *Id.* at 3.

In February 2022, Larhonda Edmond, Salem's Human Resources Director, called Duvall and told her that she would be terminated for failing to return to work. Duvall Dep. 71:1–7. Although the parties dispute whether this call was mistakenly made, it is undisputed that Duvall was not fired at that time. Salem's Statement of Facts ¶ 27, Doc. No. 11; Duvall Dep. 71:14–16, 73:6–8.

On May 31, 2022, Dr. Ghormley released Duvall to return to work without restrictions. Duvall Dep. 38:12–19; Duvall Med. Recs. 4. He determined that Duvall was capable of working a complete eight-hour shift without restrictions, including pushing, pulling, and reaching overhead. Duvall Dep. 60:15–17, 61:6–16; Duvall Med. Recs. 4–5.

About a week before receiving this report from Dr. Ghormley, Duvall started a master's degree program which required her to attend classes Monday through Thursday. Duvall Dep. 41:6–10, 16–18. Her classes made it impossible for her to work the schedule she had worked before her injury. *Id.* at 42:13–16. To accommodate Duvall's class schedule, Salem offered for her to work for sixteen hours on Saturday and Sunday. Duvall

Text Messages 1–2, Doc. No. 9-5.  Duvall countered Salem's offer by proposing that she be allowed to work from 11:00 a.m. to 7:00 p.m. every other Friday and Saturday.  *Id.*  Salem advised Duvall that it would not accommodate her scheduling request and that the only schedules available were (1) the four days on, two days off rotating schedule that she had worked when she was hired; or (2) the alternative schedule of sixteen hours on Saturday and Sunday.  *Id.* at 3–4.  When Duvall reiterated her request, Salem responded back: "That's not what we offer love..."  *Id.* at 4.

On June 14, 2022, Salem requested that Duvall contact her supervisors and discuss her work availability.  *Id.*  In response, Duvall merely sent a screenshot of her school acceptance.  *Id.* at 5.  Salem asked if Duvall was accepting or declining the scheduling options it had offered, and Duvall responded that she would let Salem know once she heard back from workers' compensation and her doctor.  *Id.*

On June 18, 2022, Duvall contacted Salem about the scheduling options, and Salem did not respond.  *Id.* at 1.  Four days later, Duvall notified Salem that she had an MRI or x-ray and that she still had weakness in her shoulder and that she would update Salem on her return after she heard from her doctor.  *Id.* at 6.  The next day, Salem informed Duvall that she had been fired because she failed to accept the scheduling options it had offered.  *Id.*

Duvall did not submit an ADA accommodations request as required by Salem's employment policies between her release to return to work on May 31, 2022, and her termination on June 20, 2022.  Duvall's Resp. to Salem's Statement of Facts ¶¶ 60–62, Doc. No. 12; Duvall Pers. Recs. 6–7.  At the time Duvall was fired, she had not been treated by

3

any physician who opined that she was unable to return to work due to a medical issue. Duvall's Resp. to Salem's Statement of Facts ¶ 65; Duvall Dep. 55:7–14. Dr. Joel Smith treated Duvall on June 22, 2022, but did not tell her that she was unable to work. Duvall Dep. 59:10–14. Rather, Duvall states that Dr. Smith told her that she could work with certain restrictions. *Id.* at 57:3–12. As of the day of her deposition, Duvall was not receiving medical treatment for her shoulder, and she has produced no documentation showing that she had work restrictions after Dr. Ghormley released her to fully return to work. *Id.* at 64:22–65:12; Salem Reply to Duvall's Resp. Mot. Summ. J. ¶ 6, Doc. No. 14.

Duvall is suing Salem for disability and race discrimination under the Americans with Disabilities Act (ADA), Title VII, and the Arkansas Civil Rights Act (ACRA). Compl. ¶¶ 32–59, Doc. No. 1. Salem is moving for summary judgment on all claims. Doc. No. 9.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility

determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Salem's motion for summary judgment is granted, and Duvall's claims are dismissed with prejudice.

A.  Disability Discrimination

Summary judgment is granted on Duvall's disability discrimination claims because she has neither presented direct evidence nor created an inference of disability discrimination.  *See Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002) (claims under ADA and ACRA governed by same standards).

### 1. Direct Evidence

Duvall could survive summary judgment by presenting direct evidence of disability discrimination, but she has failed to do so.  *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014). Direct evidence would specifically link Salem's alleged animus to Duvall's termination, and allow a reasonable fact-finder to conclude that an illegitimate basis actually motivated the termination.

### 2. Burden-Shifting Framework

Although she lacks direct evidence, Duvall could still survive summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  This framework requires Duvall to establish a prima facie case of discrimination.  *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019).  To meet her burden, she must show that: (1) she was

a disabled person as defined by the ADA; (2) she was qualified to perform the essential functions of her job; and (3) she suffered an adverse employment action because of her disability. *Id.* If Duvall establishes a prima facie case, Salem must offer evidence to show there was a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. If Salem articulates such a reason, the burden returns to Duvall to show that Salem's reason is pretextual. *Id.*

Duvall fails to establish a prima facie case of disability discrimination because she has not shown that she has a disability as defined by the ADA. *See* 42 U.S.C. § 12102(1)(A) ("physical or mental impairment that substantially limits one or more major life activities"). It is undisputed that at the time Duvall was terminated, her doctor had cleared her to return to work without restrictions. *See Magnussen v. Casey's Mktg. Co.*, 787 F. Supp. 2d 929, 946 (N.D. Iowa 2011) (at the time defendants took adverse employment action against plaintiff, they knew she had been released by her doctor to work without restrictions). Moreover, the record shows that Duvall's scheduling requests were based on her class schedule and not on any injury to her shoulder.

Even if Duvall could establish a prima facie case of disability discrimination, Salem has presented a legitimate, nondiscriminatory reason for terminating her. Salem "has a legitimate interest in having its employees actually show up for work." *Sowell v. Evergreen Packaging, LLC*, No. 5:19-CV-00275, 2020 WL 5668740, at *2 (E.D. Ark. Sept. 16, 2020), *aff'd per curiam*, 849 F. App'x 180 (8th Cir. 2021).

Duvall fails to show that Salem's reason for terminating her is pretextual. She,

however, attempts to do so by characterizing the February 2022 phone call as part of a larger pattern of Salem discriminating and retaliating against her based on her disability. Duvall Resp. Mot. Summ J. 8–11, Doc. No. 13. As part of this purported pattern, Duvall argues that once she mentioned seeing a doctor on June 14, 2022, Salem seized the opportunity to fire her on June 20 before she could visit a doctor. *Id.* Duvall's argument, however, is mere speculation. *See Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006) ("speculation and conjecture are insufficient to defeat summary judgment"). Indeed, Duvall concedes that she cannot testify about what Salem knew at the time of the February 2022 phone call. Duvall Dep. 72:10–16. Considering the record as a whole, this is insufficient to rebut Salem's legitimate, non-discriminatory reason for firing her.

      B.     <u>Failure to Accommodate</u>

Summary judgment is granted on Duvall's failure to accommodate claim. A claim that an employer failed to make a reasonable accommodation is different from an ADA disability discrimination claim. *Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1080 (8th Cir. 2009). In a reasonable accommodation case, the inquiry is whether the employer failed to reasonably accommodate a disabled employee's limitations. *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004). Nothing indicates that Salem failed to accommodate Duvall because she had been released to fully return to work without restrictions at the time she was terminated, and because she never requested an ADA accommodation.

      C.     <u>Failure to Engage in an Interactive Process</u>

Summary judgment is granted on Duvall's failure to engage in an interactive process

claim because "there is no per se liability under the ADA if an employer fails to engage in an interactive process." *Cravens v. Blue Cross & Blue Shield of Kan. City.*, 214 F.3d 1011, 1021 (8th Cir. 2000). Even if there was, Salem was not required to engage in an interactive process because the record is devoid of evidence that: (1) Duvall was ADA disabled; (2) Salem had knowledge of Duvall's disability; and (3) Duvall requested an accommodation before termination.

D.     Race Discrimination

Summary judgment is granted on Duvall's race discrimination claims. *See Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (claims under Title VII and ACRA governed by same standards). Instead of responding substantively to Salem's motion for summary judgment, Duvall moved to nonsuit. Although I fairly liberally grant motions to nonsuit, Duvall's motion is denied because nothing in the record indicates that this case involves racial discrimination. Duvall's failure to substantively respond to the motion will be considered a waiver of her response. *See Morrow v. United States*, 47 F.4th 700, 703–04 (8th Cir. 2022) (district court may dismiss action with prejudice in response to plaintiff's motion for dismissal without prejudice); *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

IV. CONCLUSION

For the foregoing reasons, Salem's motion for summary judgment is granted, and Duvall's claims are dismissed with prejudice.

IT IS SO ORDERED this 17th day of May, 2024.

                                                                 UNITED STATES DISTRICT JUDGE